IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| FLOGROWN, LLC. | § |
| | § Civil Action No: |
| Plaintiff, | § |
| | § |
| vs. | § |
| | § JURY TRIAL DEMANDED |
| DIXIE HERITAGE, LLC., | § |
| ASHER TORGEMAN, | § |
| individually, and | § |
| ALBERT TOURGEMAN, | § |
| individually, | § |
| | § |
| Defendants. | |

## COMPLAINT

Plaintiff, FLOGROWN, LLC., ("FLOGROWN"), by and through undersigned attorneys, hereby files this Original Complaint against Defendant DIXIE HERITAGE, LLC. ("DIXIE"), Defendant Asher Torgeman, an individual ("Asher Torgeman"), Defendant Albert Tourgeman, an individual ("Albert Tourgeman") (collectively, "Defendants"), and alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff FLOGROWN seeks relief and recovery from the conduct of Defendants who have, without authorization, copied and sold products of the Plaintiff. In particular, Defendants have counterfeited and, on information and belief, continue to counterfeit Plaintiff's clothing line and use trademarks belonging to FLOGROWN in furtherance of their wrongful conduct.

2. Plaintiff FLOGROWN is a Florida limited liability company with a business

address in Orlando, Florida and is the creator, manufacturer, and distributor of the famous and iconic apparel line sold under the trademarks "FLOGROWN" (the "Word Mark," "Design Mark," or collectively the "Marks").  This famous apparel line includes t-shirts, sweatshirts, hats, and athletic gear that were first sold in April of 2011 by its owner, Jesse Welch under the Word Mark "FLOGROWN."  Mr. Welch created the FLOGROWN brand as a suggestive reference to being proudly born and raised in the State of Florida.  Since its inception in 2011, FLOGROWN has been continuously engaged through many years of hard work, innovation, marketing, and advertising, and as a result, FLOGROWN has developed into a staple of the fashion, sports, and boating industry and may be found in many retail locations nationwide.  Further, FLOGROWN has continued to expand its clothing products to incorporate collegiate and professional markets throughout the State of Florida.  Exhibit 2 is a copy depicting the FLOGROWN Marks that are the foundation of this lawsuit.  Exhibit 3 is a series of images that depict FLOGROWN products with the FLOGROWN Marks attached thereto.

3. FLOGROWN sells their merchandise through a variety of stores and websites.  For example, distributors such as Bealls Stores, Surf Shops, Outdoor Life, and BassPro Shops, in the State of Florida, carry its products, and its products can be purchased on FLOGROWN's own website at www.flogrown.com.  (Welch Decl. at ¶12.)[1]

4. FLOGROWN spent years and thousands of dollars designing their brand, logo and merchandise.  Since its inception in 2011, and through many years of hard work, innovation, marketing, and advertising, FLOGROWN has developed into a staple of the fashion, sports, and boating industry and may be found in many retail locations

---

[1] Exhibit 1 to this Complaint is the Declaration of Jesse Welch (hereinafter "Welch Decl.")

nationwide. (Welch Decl. at ¶¶ 10, 12.)

5. Taking advantage of the Plaintiff's valuable intellectual property and well-established iconic brand, Defendants chose to unfairly misappropriate the skill, expenditure, and design efforts of FLOGROWN. In furtherance of their misappropriation, Defendants have manufactured, offered for sale, and sold counterfeit apparel in the State of Florida that were unauthorized, cheap reproductions of FLOGROWN products. The unauthorized reproductions of the Defendants' will be hereinafter identified as "Dixie Heritage Goods."

6. In August 2016, Joey Camacho, a designer with FLOGROWN, entered the defendants' Oviedo location and discovered V-neck shirts with the FLOGROWN Marks "heat pressed" onto the shirt. (Welch Decl. at ¶ 16.)

7. Plaintiff's scheme is illustrated, in part, by Exhibit 6, which shows the Dixie Heritage Goods purchased by the Jesse Welch in Lakeland. Exhibit 6 is the receipt for the merchandise sold to Mr. Welch. Mr. Welch personally examined the Dixie Heritage Goods and determined they were a "heat pressed" counterfeit not made by or for FLOGROWN (Welch Decl. at ¶ 18.)

8. Defendants were not authorized to design, manufacture and/or sell any merchandise using the FLOGROWN brand marks other than the merchandise purchased directly from FLOGROWN's warehouse. (Welch Decl. at ¶ 18.)

9. FLOGROWN marks its products with its trademark "FLOGROWN." The "FLOGROWN" Marks were first used by FLOGROWN at least as early as April 30, 2011 and was used in commerce at least as early as January 1, 2013. The "FLOGROWN" Marks are the subject of FLOGROWN's U.S. Trademark Registrations 4,207,092 and

5,044931, the status pages for which are attached as Exhibit 2.

10. In December 2016, Plaintiff entered the Dixie Heritage Lakeland location in Lakeland, Florida and purchased over $800 of counterfeit FLOGROWN Products (Welch Decl. at ¶¶ 17-18; Exhibit 6.)

11. Defendants operate several retail locations in Oviedo, Sanford, Lakeland, and Melbourne and have an interactive website from which a variety of products may be ordered by Florida residents. That website address is https://dixieheritagestore.com. Defendants interactive website continues to be a conduit for other products shipped throughout Florida.

12. Defendants Asher Torgeman and Albert Tourgeman were each charged with 38 counts of counterfeiting on March 24, 2017 by the State's Attorney's Office for the Tenth Judicial Circuit of Florida in Polk County, pursuant to an investigation of counterfeit FLOGROWN products and subsequent Complaint Affidavits filed by the Lakeland Police Department on February 20, 2017.

## JURISDICTION AND VENUE

13. This is an action for unfair competition under Section 43(a) the Lanham Act, 15 U.S.C. § 1125 and the laws of the State of Florida, trademark infringement under the common law, and copyright infringement under 17 U.S.C. § 106 and § 501 *et seq*, and Fla. Stat. §§ 542.335(1)(b)(1), 501.201 *et seq.*, governing Florida's deceptive and unfair trade practices. The matter in controversy, exclusive of interest and costs, exceeds the sum or value of seventy-five thousand dollars ($75,000) and arises under the laws of the United States.

14. The Court has jurisdiction of the subject matter pursuant to § 39 of the

Federal Trademark Act, 15 U.S.C. § 1121, and the Judicial Code, 28 U.S.C. §§ 1331, 1332(a) and (c), and 1338 and/or 1367(a).

15.     The Court has personal jurisdiction over the Defendants because, among other things, Defendants have done and are doing business in the State of Florida and in this judicial district.  Further, the Defendants have caused injury to the Plaintiff and its property within the State of Florida and in this district.

16.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or § 1400(a).

## THE PARTIES

17.     Plaintiff FLOGROWN, LLC. ("FLOGROWN") is a limited liability company organized existing under the laws of the State of Florida, with a principal place of business at 6976 Venture Circle, Orlando, FL 32807.

18.     On information and belief, Defendant DIXIE HERITAGE, LLC. is a Florida limited liability corporation with multiple retail locations throughout the State of Florida including, Oviedo, Sanford, Lakeland, and Melbourne and their principal place of business is located at 200 Towne Center Circle, #39, Sanford, FL 32711.

19.     On information and belief, Defendant Asher Torgeman is an individual who resides in the State of Florida and may be served at 200 Towne Center Circle, #39, Sanford, FL 32711.

20.     On information and belief, Defendant Albert Tourgeman is an individual who resides in the State of Florida and may be served at 874 Charlotte Street, Longwood, FL 32750.

## COUNT ONE

5

## UNFAIR COMPETITION
## 15 U.S.C. § 1125(a), Section 43(a) of the Lanham Act

21. As a cause of action and grounds for relief, Plaintiff FLOGROWN alleges that Defendant DIXIE has engaged and is engaged in acts of unfair competition under §43(a) of the Federal Trademark Act, 15 U.S.C. §1125(a) and common law and incorporates by reference prior Paragraphs 1 through 20 of the Complaint, inclusive, as if fully set forth herein.

22. As a cause of action and grounds for relief, Plaintiff FLOGROWN alleges that Defendant Asher Torgeman has engaged and is engaged in acts of unfair competition under § 43(a) of the Federal Trademark Act, 15 U.S.C. § 1125(a), and at common law and incorporates by reference prior Paragraphs 1 through 21 of the Complaint as part of this count.

23. As a cause of action and grounds for relief, Plaintiff FLOGROWN alleges that Defendant Albert Tourgeman has engaged and is engaged in acts of unfair competition under § 43(a) of the Federal Trademark Act, 15 U.S.C. § 1125(a), and at common law and incorporates by reference prior Paragraphs 1 through 21 of the Complaint as part of this count.

24. As part of its cause of action against Defendant Asher Torgeman, Plaintiff alleges on information and belief that Defendant Asher Torgeman substantially and personally participated and participates in the unfair competition complained of herein. Plaintiff alleges on information and belief that Defendant Asher Torgeman used and uses Defendant DIXIE HERITAGE, LLC. to deliberately carry out the acts of unfair competition complained of here.

25. As part of its cause of action against Defendant Albert Tourgeman, Plaintiff alleges on information and belief that Defendant Albert Tourgeman substantially and personally participated and participates in the unfair competition complained of herein.  Plaintiff alleges on information and belief that Defendant Albert Tourgeman used and uses Defendant DIXIE HERITAGE, LLC. to deliberately carry out the acts of unfair competition complained of here.

26. Defendants' manufacturing and sale of merchandise conveyed to customers with a hang tag bearing infringing reproductions of the FLOGROWN Marks and products as illustrated in Exhibit 5 constitute, inter alia, false designations of origin within the meaning of Section 43(a) of the Federal Trademark Act, 15 U.S.C. section 1125(a) which is likely to confuse or deceive the public as to the source, sponsorship and/or Plaintiff's approval, as well as to all of Plaintiff's immediate and irreparable injury.

27. Defendants have passed off the counterfeit Dixie Heritage Goods as though they originated from FLOGROWN and Defendants have traded upon the goodwill of FLOGROWN and misappropriated the efforts, skill and investment FLOGROWN expended to design, produce and market their product lines. (*See* Exhibits 2-7; and, *see generally*, Welch Decl.)

28. Defendants have harmed FLOGROWN and wrongfully taken unto themselves sales and profits from their unlawful activity.  FLOGROWN has further been harmed by loss of sales to the Defendants and suffered price, product, and brand degradation for its products in the market.

29. Plaintiff believes that unless enjoined by this Court, Defendants will

continue to engage in acts of unfair competition against the Plaintiff, thereby deceiving the public and causing the Plaintiff immediate and irreparable injury for which there is no adequate remedy at law.

## COUNT TWO
## TRADEMARK INFRINGEMENT
## COMMON LAW

30.     As a cause of action and ground for relief, Plaintiff FLOGROWN alleges that Defendants have engaged in trademark infringement under the common law and incorporates by reference paragraphs 1 through 29 of the Complaint, inclusive, as if fully set forth herein.

31.     As part of its cause of action against Defendant Asher Torgeman, Plaintiff alleges based on information and belief that Defendant Asher Torgeman substantially and personally participated in the trademark infringement complained of herein and incorporates by reference paragraphs 1 through 30 of the Complaint inclusive, as if fully set out herein.  Plaintiff alleges on information and belief that Defendant Asher Torgeman used Defendant DIXIE to deliberately carry out the acts of trademark infringement complained of in the instant action.

32.     As part of its cause of action against Defendant Albert Tourgeman, Plaintiff alleges based on information and belief that Defendant Albert Tourgeman substantially and personally participated in the trademark infringement complained of herein and incorporates by reference paragraphs 1 through 30 of the Complaint inclusive, as if fully set out herein.  Plaintiff alleges on information and belief that Defendant Albert Tourgeman used Defendant DIXIE to deliberately carry out the acts of trademark infringement complained of in the instant action.

33. Defendants have engaged in offering for sale and/or sale, distributing, and advertising of Dixie Heritage Goods in the State of Florida and interstate commerce. The Defendants Dixie Heritage Goods have been sold to customers with receipts that bear infringing reproductions of Plaintiff's Marks. (*See* Welch Decl. at ¶¶ 16-18; *see* Exhibits 4 & 5).

34. Defendants used the FLOGROWN Marks for the purpose of exploiting and trading upon the goodwill of Plaintiff and to enable the Defendants to misrepresent their Dixie Heritage Goods as emanating from or being otherwise sponsored or approved by Plaintiff.

35. The Dixie Heritage Goods are in inferior in quality to FLOGROWN products. (*See* Welch Decl. ¶ 18.)

36. On information and belief, Defendants had actual knowledge of Plaintiff's prior use and exclusive rights in the FLOGROWN Marks when Defendants began offering for sale and/or sale of unauthorized reproductions of their Marks and products and thus willfully and deliberately infringed Plaintiff's exclusive rights in the Marks.

37. Because of the inferior quality of the Dixie Heritage Goods sold by Defendants under the guise of originating from Plaintiff, jeopardizing Plaintiff's FLOGROWN brand which is now becoming the subject of poor online reviews concerning the quality of its products. (*See* Welch Decl. at ¶ 18.)

38. By its conduct, Defendants have harmed FLOGROWN and wrongfully taken unto themselves sales and profits to which they had and have no right. Plaintiff has further been harmed by loss of sales to Defendants and price degradation of the market.

**COUNT THREE**

## DECEPTIVE AND UNFAIR TRADE PRACTICES UNDER COMMON LAW
## <u>FLA. STAT. §§ 501.207 – 501.2075</u>

39. As cause of action and ground for relief, Plaintiff FLOGROWN alleges that Defendants have engaged in unfair trade practices by representing to consumers that their products have a source, nature, and quality that they do not have and incorporates by reference Paragraphs 1 through 38 of the Complaint, inclusive, as if fully set forth herein.

40. As part of its cause of action against Defendant Asher Torgeman, Plaintiff alleges on information and belief that Defendant Asher Torgeman substantially and personally participated in the false and misleading representations and deceptive conduct and incorporates by reference Paragraphs 1 through 39 of the Complaint, inclusive, as if fully set forth herein.

41. As part of its cause of action against Defendant Albert Tourgeman, Plaintiff alleges on information and belief that Defendant Albert Tourgeman substantially and personally participated in the false and misleading representations and deceptive conduct and incorporates by reference Paragraphs 1 through 39 of the Complaint, inclusive, as if fully set forth herein.

42. Defendants' false and misleading representations and deceptive conduct are material in that the same have caused and are likely to cause prospective consumers of the Plaintiff's products to be deceived as to the identity of the person to whom rights belong and as to the level of quality of the product.

43. Defendants have disparaged the goods and services and business of Plaintiff through false and misleading representations of material facts.

44. By reasons of belief, the Defendants provided knowingly false and misleading representations of fact and conduct in violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*.

45. As a direct and proximate result of said misleading and deceptive conduct, the Plaintiff, as well as consumers, has sustained and is likely to continue to sustain damages.

46. Defendant Asher Torgeman is personally liable for the afore-described deceptive and unfair trade practices because he personally directed, controlled, and participated in the unfair activity.

47. Defendant Albert Tourgeman is personally liable for the afore-described deceptive and unfair trade practices because he personally directed, controlled, and participated in the unfair activity.

48. Plaintiff has no adequate remedy at law.

49. Pursuant to Florida's Deceptive and Unfair Trade Practices Act §§ 501.207 – 501.2075, the Plaintiffs are entitled to enjoin Defendants' unlawful conduct as well as obtain compensatory damages, punitive damages, and attorney's fees.

## COUNT FOUR
## COPYRIGHT INFRINGEMENT
## 17 U.S.C. §§ 106 and 501

50. As a cause of action and ground for relief, Plaintiff FLOGROWN alleges that Defendants have and are engaged in copyright infringement under 17 U.S.C. §§ 106 & 501 and incorporates by reference Paragraphs 1 through 49 of the Complaint, inclusive, as if fully set forth herein.

51. As part of its cause of action against Defendant Asher Torgeman, Plaintiff alleges on information and belief that Defendant Asher Torgeman substantially and personally participated and participates in the copyright infringement complained of herein and Plaintiff incorporates by reference paragraphs 1 through 50 of the Complaint, inclusive, as if set forth fully here.  Plaintiff alleges on information and belief that Defendant Asher Torgeman used and uses Defendant DIXIE to deliberately carry out the acts of copyright infringement complained of herein.

52. As part of its cause of action against Defendant Albert Tourgeman, Plaintiff alleges on information and belief that Defendant Albert Tourgeman substantially and personally participated and participates in the copyright infringement complained of herein and Plaintiff incorporates by reference paragraphs 1 through 50 of the Complaint, inclusive, as if set forth fully here.  Plaintiff alleges on information and belief that Defendant Albert Tourgeman used and uses Defendant DIXIE to deliberately carry out the acts of copyright infringement complained of herein.

53. The photograph in Exhibit 8 shows a Mark owned by FLOGROWN that was authored by Mr. Welch. (*see generally,* Welch Decl. at ¶ 4). This photographed Mark is the subject of a registration of copyright with the U.S. Copyright Office (hereinafter "the Infringed Photograph").  The application for registration of the Infringed Photograph was filed with a request for special handling pursuant to 37 C.F.R 201.15.

54. Exhibit 7 is a copy of the Copyright Application for the photograph of Exhibit 8 (Service Request No. 1-4664843201).

55. Defendants have infringed Plaintiff's copyright in the Infringed Photograph in violation of Sections 106 and 501 et seq. of the Copyright Act through

the actionable copying of the Infringed Photograph.

56. Defendants' acts are willful, intentional and purposeful, in disregard of and with indifference to Plaintiff's rights.

57. As a direct and proximate result of the infringement by Defendants, Plaintiff is entitled to damages in an amount to be proven at trial.

58. Plaintiff is also entitled to Defendants' profits attributable to the infringement pursuant to 17 U.S.C. § 504(a)(1) and (b), including an accounting of and a constructive trust as to such profits.

59. As a direct result and proximate result of the acts and conduct stated herein the Plaintiff has sustained and will continue to suffer substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, Plaintiff believes that unless enjoined and restrained by this Court, the Defendants will continue to infringe the Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that judgment be entered against the Defendants, jointly and severally, and that such judgment include:

1. Findings that the Defendants have, jointly and severally:

   a. competed unfairly with Plaintiff as defined by § 43(a) of the Federal Trademark Act, 15 U.S.C. § 1125(a), and at common law and have otherwise injured the Plaintiff's business reputation in the manner complained of herein;

   b. infringed Plaintiff's exclusive rights in the FLOGROWN Marks at common law;

and

c. have infringed the Plaintiff's copyright in the Infringed Photograph.

2. An ORDER from the Court providing that the Defendants, jointly and severally:

   a. Be permanently enjoined from (a) continuing to infringe Plaintiff's copyright in the Infringed Photograph; (b) making, having made, offering to sell or selling any FLOGROWN products or any other reproduction, counterfeit, copy or colorable imitation of their merchandise and products; (c) using the FLOGROWN trademarks on any product or packaging or invoices or any other reproduction, counterfeit, copy or colorable imitation of said marks; and (d) otherwise unfairly competing with the Plaintiff or its agents or distributors or otherwise injuring Plaintiff's business reputation. Such injunction shall extend to the Defendants and their respective agents, servants, employees, officers, successors, licensees and assigns and all persons acting in concert or participation with each or any of them;

   b. Be required in equity to account for, within 15 days of the ORDER, account for and pay to Plaintiff the profits Defendants have realized which are attributable to its acts of unfair competition pursuant to Section 43(a) of the Federal Trademark Act, 15 U.S.C. §1125(a) and/or trademark infringement pursuant to § 35(a) of the Federal Trademark Act, 15 U.S.C. § 1117(a), as amended;

   c. Be required to deliver for destruction all counterfeit merchandise and products, as well as any advertisements, labels, signs, packages, boxes,

14

    cartons, wrappers, and all other materials in the possession custody or under the control of either Defendants which are, bear or are packaged with the FLOGROWN trademark infringing reproduction of counterfeit merchandise which bear or are packaged with any infringing reproduction of the marks, and all tooling, molds, patterns or designs and any means for making or duplicating the same pursuant to § 36 of the Federal Trademark Act, 15 U.S.C. § 1118.

    d. Be required to pay the Plaintiff the Defendant's profits and any costs of this action and any damages which the Plaintiff sustained as a result of Defendants' acts of trademark infringement and unfair competition and such damages shall be trebled pursuant to § 35(a) of the Federal Trademark Act, 15 U.S.C. § 1117(a), as amended.

    e. Be required to pay the Plaintiff the damages that Plaintiff has sustained as a result of the Defendants' acts of copyright infringement pursuant to the Federal Copyright Act, 17 U.S.C. § 501.

    f. Be required to pay to Plaintiff, as punitive damages, $100,000 or an amount as the Court may deem just and proper. Be required to pay the plaintiff its reasonable attorney's fees incurred in pursuit of this action.

3. Such other, different and additional relief as the Court deems equitable and proper.

Dated: March 31, 2017

Respectfully Submitted,

By: /s/ Andrew S. Rapacke
Andrew S. Rapacke, Esquire
*Attorney for Plaintiff*
**THE RAPACKE LAW GROUP, P.A.**
**Florida Bar No: 0116247**
618 East South Street
Suite 500
Orlando, FL 32801
Telephone: (954) 727-8268
Facsimile:  (407) 992-6101
Email and Court designation:
andy@arapackelaw.com

16